**E-FILED on** 7/31/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARMANDO AND ALINDA MARTINEZ, on behalf of themselves and a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; WELLS FARGO HOME MORTGAGE, INC.; WELLS FARGO FINANCIAL SERVICES, INC.; and WELLS FARGO REAL ESTATE TAX SERVICES, LLC,<br><br>Defendants. | No. C-06-03327 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH FOUR OF SECOND AMENDED COMPLAINT<br><br>**[Re Docket No. 55]** |

Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., Wells Fargo Financial Services, Inc., and Wells Fargo Real Estate Tax Services, LLC (collectively, "Wells") move to dismiss counts two through four of plaintiffs' second amended complaint ("SAC") for failure to state a claim. Plaintiffs Armando and Alinda Martinez (together, "plaintiffs") purport to bring this action on behalf of themselves and a class of similarly situated individuals.[1] Plaintiffs

---

[1] No class has been certified under Fed. R. Civ. P. 23 in this action.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH FOUR OF SECOND AMENDED COMPLAINT—No. C-06-03327 RMW
SPT

United States District Court
For the Northern District of California

oppose the motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court GRANTS defendants' motion to dismiss counts two through four of plaintiffs' second amended complaint.

## I. BACKGROUND

Plaintiffs allege that they are home mortgage borrowers from whom Wells wrongfully charged and collected fees for settlement services related to the refinancing of their home mortgage in May of 2005. SAC ¶ 4. Wells is a financial services company that provides, *inter alia*, settlement services in connection with residential mortgage loans. According to the complaint, plaintiffs were given a good faith estimate for closing costs by a loan broker which included an estimate of $350 for an underwriting fee. *Id.* ¶ 33. Six days later, Wells charged plaintiffs an underwriting fee of $800. Plaintiffs assert that both the good faith estimate and the actual charge were excessive. *Id.* In particular, the risk assessment that is involved in underwriting a loan is performed "by a computerized automated underwriting system by a loan broker or loan officer before Wells Fargo's loan clerks ever receive the application," and Wells "merely runs information collected by others about the borrower and the proposed loan through the automated program "at a *de minimus* cost." *Id.* ¶ 15. Plaintiffs were also charged a tax service fee of $75 for service provided by Wells Fargo Real Estate Tax Services, LLC ("WFRETS") even though WFRETS purportedly charged Wells less than $75 for providing the service. *Id.* Plaintiffs also assert on information and belief that Wells marks up fees for other services.[2] *Id.*

Plaintiffs further allege that because the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), the federally-created entities that will purchase the federally-related loans processed by Wells, determine the requisite underwriting criteria for loans they will buy, Wells has no interest in the underwriting criteria at all. *Id.* ¶ 16. According to plaintiffs, only those borrowers who meet Fannie Mae's and Freddie Mac's underwriting criteria for their loans are passed along to Wells. *Id.* ¶ 25. Plaintiffs also allege that the loans at issue are made for the purpose of immediately selling them to investors, principally

---

[2] The complaint does not indicate what such other services are and how the related fees are marked up.

Fannie Mae and Freddie Mac. *Id.* ¶ 19. Only borrowers with loans that qualify for immediate purchase by Fannie Mae and Freddie Mac are members of the proposed class. Specifically, plaintiffs purport to bring this action as a class action on behalf of a class defined as:

> All persons and entities who, on or after January 1, 1998, obtained a federally-related home mortgage (1) whose automated underwriting score was "Accept," "Accept-Plus," "Approve" or a similar code indicating an acceptable loan for purchase by FANNIE MAE or FREDDIE MAC and paid one or more defendants an underwriting fee, or (2) was charged a fee by one or more defendants for tax services in an amount that exceeded the amount charged by the service entity.

*Id.* ¶ 1.

Plaintiffs also allege that Wells "overcharges in violation of state and federal laws, misrepresenting the costs of underwriting and tax services, failing to disclose the actual cost of these services and imposing illegally marked up underwriting, tax service and related costs of the mortgage contract" *Id.* ¶ 2. According to the complaint, the government charters for Fannie Mae and Freddie Mac provide that they are charged with increasing the affordability of home ownership by reducing costs to borrowers. *Id.* ¶ 10. Plaintiffs allege that Wells undermines these efforts by improperly charging for underwriting, tax services, and related services and keeping cost savings for itself. *Id.* ¶ 11. According to plaintiffs, Wells' conduct "frustrates and violates federal laws and policy, hurts competition among banks by allowing dishonest banks such as [Wells] obtain an unfair advantage over those banks that follow the law, and diminishes the safety and soundness of defendants and other banks." *Id.* In addition, "the fees charged do not relate in any manner to deterring any misuse by customers of banking services." *Id.* The fees vary depending on the branch office from which the loan originates and do not vary based on any differences among class members. *Id.* ¶ 27.

As pled, Wells requires its borrowers to pay the cost of automatic underwriting and tax services as a condition to obtaining a loan, and additionally, charges borrowers not only the cost of such services but an added markup from cost that Wells pockets. *Id.* ¶ 13. Wells also intentionally conceals its practices by listing the inflated underwriting charge on the HUD-1 Settlement Statement while failing to disclose that the listed charge is not the actual cost incurred. *Id.* ¶ 30. Further, Wells allegedly fails to make the required disclosures pursuant to 24 C.F.R. § 3500.7(e)(1). *Id.* ¶ 31.

Counts two, three, and four all assert violations of Cal. Bus. & Prof. Code § 17200 *et seq.* Count two of plaintiffs' complaint alleges that Wells engaged in unlawful business acts and practices, count three alleges that Wells engaged in unfair business acts and practices, and count four alleges that Wells engaged in fraudulent business acts and practices.

## II.  ANALYSIS

Wells moves to dismiss plaintiffs' state law claims in counts two through four on the basis that they are preempted by federal law and otherwise fail to state a claim.  This court previously concluded that plaintiffs' § 17200 claims of unfair and deceptive business acts and practices were preempted by the National Bank Act ("NBA") and regulations enacted thereunder.  *See* Mar. 30, 2007 Order Granting Motion to Dismiss Counts Two through Six of First Amended Complaint ("March 30, 2007 Order") at 10:15-12:15.  The court concluded that plaintiffs failed to state a claim as to their § 17200 claim for unlawful business acts and practices.  *Id.* at 13:4-15.  However, the court granted plaintiffs leave to amend such claims.

### A.  Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 530 U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citations and edit marks omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citations omitted).  The court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

**B.      Section 17200 Claims**

For the reasons set forth below, the court finds that plaintiffs' amended § 17200 claims are either preempted by the National Bank Act and regulations thereunder or that plaintiffs have otherwise failed to state a § 17200 claim.

**1.      Unfair and Deceptive Business Acts or Practices**

As this court stated in the March 30, 2007 Order, Congress expressly authorizes national banks to engage in real estate lending under the NBA:

> (a) Authorization to make real estate loans; orders, rules, and regulations of Comptroller of the Currency
>
> Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to section 1828(o) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order.

12 U.S.C. § 371(a). Because of the "extensive federal statutory and regulatory scheme" enacted by Congress in the field of banking, "the usual presumption against federal preemption of state law is inapplicable to federal banking regulation." *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005). Nevertheless, "states may regulate national banks where 'doing so does not prevent or significantly interfere with the national bank's exercise of its powers.'" *Id.* at 963 (quoting *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 33 (1996)).

The extent of the NBA's regulation depends on both the enumerated and incidental powers conferred upon national banks. *Id.* "[A] national bank's activity is authorized as an incidental power, necessary to carry on the business of banking, within the meaning of 12 U.S.C. § 24, Seventh, if it is convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act." *Id.* at 960 (citation and internal quotations omitted).[3] However, a connection must exist between an incidental activity and an express power in order for the activity to be authorized as an incidental power. *Id.* (citations omitted). As this court held in the March 30, 2007 Order, the express power conferred by the NBA is the authority to "engage in real estate lending," including to "make, arrange, purchase or

---

[3]      More specifically, § 24 addresses corporate powers authorized pursuant to a national bank's corporate form following the filing of its articles of association and organization certificate.

sell loans or extensions of credit secured by liens on interests in real estate." 12 U.S.C. § 371. As relevant to the present action, the determination of interest and non-interest charges and fees are incidental powers to the express power of engaging in real estate lending. The Office of the Comptroller of the Currency ("OCC") has issued regulations that address national banks' powers to determine interest rates and non-interest charges and fees, including the preemptive effect of such powers, in Title 12 Title, Chapter I, Part 7, Subpart D.

Here, plaintiffs' amended allegations continue to premise their UCL claims upon Wells' conduct and discretion in setting, charging, and disclosing settlement service fees, namely for underwriting services and tax services related to settlement of federally-related home mortgages. However, as noted in the March 30, 2007 Order, 12 C.F.R. § 7.4002 specifically provides that a national bank "may charge its customers non-interest charges and fees, including deposit account service charges" and that the determination of such charges and fees are "business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles."[4] Further, the OCC regulations provide that a national bank is deemed to establish such charges and fees in accordance with safe and sound banking principles if "the bank employs a decision-making process through which it considers the following factors:"

(i) The cost incurred by the bank in providing the service;

(ii) The deterrence of misuse by customers of banking services;

(iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

(iv) The maintenance of the safety and soundness of the institution.

12 C.F.R. § 7.4002(b)(2).[5] Because of these regulations, this court held that the settlement fees at issue in plaintiffs' first amended complaint fell within the scope of the OCC's regulations as set forth

---

[4] The NBA confers authority upon the OCC to promulgate regulations implementing the Act. *See* 12 U.S.C. § 371(a) (conferring upon the OCC the authority to set restrictions and requirements for national banks' real estate lending power). "Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

[5] In addition, 12 C.F.R. § 34.4 provides that "a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning . . . [t]he terms of credit . . . [and] [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 34.4(4), 34.4(10).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH FOUR OF SECOND AMENDED COMPLAINT—No. C-06-03327 RMW
SPT                                                6

in § 7.4002 and, therefore, plaintiffs' claims were preempted under the doctrine of conflict preemption.

Plaintiffs' amended pleadings do not take their § 17200 claims for unfair and deceptive business acts and practices outside the reach of § 7.4002. Plaintiffs have added allegations that Wells' conduct "frustrates and violates federal laws and policy, hurts competition among banks by allowing dishonest banks such as [Wells] obtain an unfair advantage over those banks that follow the law, and diminishes the safety and soundness of defendants and other banks." SAC ¶ 11. In addition, "the fees charged do not relate in any manner to deterring any misuse by customers of banking services." *Id.* Although these allegations seek to assert that Wells' charges for tax services, underwriting, and related fees fail to comply with the factors set by the OCC for decisions that accord with safe and sound banking principles, *see* § 7.4002(b)(2), plaintiffs' claims are still based on alleged improprieties in Wells' federally-conferred discretion in setting fees, which is within the incidental powers authorized by the NBA and the OCC regulations. Moreover, as stated in the July 10, 2007 Order, whether there is conflict preemption does not turn on whether a national bank has complied with these factors; rather the factors set forth in § 7.4002(b)(2) are merely guidelines provided by the OCC to banks of criteria banks should consider in setting non-interest charges and fees. Regulation of a national bank's adherence to these regulations are within the exclusive purview of the OCC. *Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1564 (Apr. 17, 2007).

The Supreme Court's recent decision in *Watters* supports the court's conclusion. In *Watters*, the issue before the Court was whether the mortgage business conducted by a national bank's operating subsidiary should be accorded the same preemption from state licensing, reporting, and visitorial regimes as the bank itself. The Court held that the mortgage business by the operating subsidiary is subject to the superintendence of the OCC to the exclusion of state registration requirements to the same extent a national bank's conduct that falls within its express and incidental powers under the NBA. *Id.* Although the issue before the *Watters* Court differs from the issue before this court, the Court's analysis of the scope of the NBA and OCC regulations in preempting state laws is instructive. In particular, the Court noted that "[a]s the agency charged by Congress with supervision of the NBA, [the] OCC oversees the operations of national banks and their

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS TWO THROUGH FOUR OF SECOND AMENDED COMPLAINT—No. C-06-03327 RMW
SPT                            7

interactions with customers." *Id.* "The agency exercises visitorial powers, including the authority to audit the bank's books and records, largely to the exclusion of other governmental agencies." *Id.* Although the Court reiterated that there is no field preemption by the NBA, *id.* at 1567 ("[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA"), the Court made clear that the specific grants of enumerated and incidental powers do preempt contrary state law, *id.* ("[w]e have interpreted grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law") (internal quotations, edit, and citation omitted).  In particular, "[b]eyond genuine dispute, state law may not significantly burden a national bank's [] exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA." *Id.* at 1567-68.  Thus, where state law would "significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Id.* at 1567.

Here, as stated in the March 30, 2007 Order and above, the NBA explicitly confers upon national banks such as Wells the authority to engage in real estate lending, and the determination of interest and non-interest charges and fees associated with the business of real estate lending are incidental powers of that authority.  Were the court to allow plaintiffs' § 17200 claims, which rely upon state law to contest the fairness of Wells's decision-making and setting of charges that are clearly authorized by the NBA and within the purview of the OCC's exclusive regulation, the court would essentially be allowing the superimposition of state law requirements upon the OCC's exclusive superintendence of Wells' exercise of its federally-conferred powers.  *Watters* counsels against such a practice.  Accordingly, the court concludes that plaintiffs' claims of unfair and deceptive business acts and practices are preempted by the NBA and the OCC's regulations thereunder.[6]

---

[6] The court again reiterates that in so holding, the court does not conclude that § 17200 claims are *per se* preempted by the NBA and regulations thereunder.  Rather, to the extent a § 17200 claim seeks to contest the exercise of a national bank's enumerated or incidental authority, such a claim

1         **2.**      **Unlawful Business Practices or Acts**

The court previously held that plaintiffs' have failed to state a claim under the unlawful prong of § 17200 because plaintiffs failed to state a claim that Wells violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* based on alleged overcharges, did not sufficiently allege that Wells has acted unlawfully because it has exceeded its authority conferred by the NBA or regulations thereunder, and failed to state a claim for violation of 24 C.F.R. § 3500, App. A.  In their opposition, plaintiffs clarify that (1) they do not allege a RESPA violation as an unlawful predicate act supporting their UCL claim, and (2) they do not allege that Wells purported exceeding of their NBA authority serves as a predicate unlawful act for their UCL claim.  Pls.' Opp'n at 13:7-14.  Rather, plaintiffs appear to contend that the unlawful acts that serve as the predicates for their § 17200 claim are (1) Wells' non-disclosure of the actual costs of its settlement services and any mark-ups made to such costs purportedly pursuant to duties under Cal. Civil Code § 1572,[7] and (2) Wells' alleged non-compliance with the disclosure requirements for the HUD-1 form.

The court concludes that plaintiffs have failed to state a claim under the unlawful prong of § 17200 based on the two asserted predicate acts.  Plaintiffs contend that Cal. Civil Code § 1572 "imposes a duty on any party to a contract to not suppress that which is true, with knowledge or belief of the fact[] and to not make a suggestion, as a fact, when [it] does not believe it is true" and, further, imposes a duty upon a party to a transaction a duty to disclose material facts in its sole possession which it knows are not known to or reasonably discoverable by the other party.  However, as discussed, *supra* § B.1, a national bank's discretion of what to charge for non-interest charges related to the enumerated power of providing real estate lending services is governed by the NBA and the OCC's regulation and regulated by the OCC.  Under the federal scheme, Wells is required to disclose its settlement charges in the HUD-1 form, but is not required to additionally

---

significantly interferes with the federally-conferred authority of the bank and the exclusive regulatory authority of the OCC.

[7]     Plaintiffs cite to paragraphs 40-43 of their SAC as support for their § 17200 claim.  However, the cited allegations appear to relate to plaintiffs assertion that the doctrines of "accrual, fraudulent concealment, continuing violation, and equitable tolling" apply to their claims (presumably for statute of limitations purposes).

1 disclose its actual costs. Therefore, the purported additional or alternate disclosure requirements
2 imposed by Cal. Civil Code § 1572 are preempted.

3      Plaintiffs also contend that Wells' non-compliance with the disclosure requirements of the
4 HUD-1 form serves as a predicate unlawful act and practice. Plaintiffs argue that Wells has failed to
5 comply because, although the HUD-1 form requires Wells to list only charges and not actual costs,
6 Wells improperly lists a charge consisting of a third-party fee plus Wells' purported mark-up instead
7 of only the fee the third-party charges Wells.[8] However, as the court concluded in the March 30,
8 2007 Order, the applicable HUD regulation requires Wells to disclose only actual *charges*. In
9 particular, the HUD regulation indicates that the HUD form is to disclose in itemized format all
10 charges imposed upon the borrower by the lender. *See* Mar. 30, 2007 Order at 13:8-15 ("This form
11 is to be used as a statement of *actual charges and adjustments* to be given to the parties in
12 connection with the settlement. . . . The settlement agent shall complete the HUD-1 to *itemize all*
13 *charges imposed* upon the Borrower and the Seller by the Lender and all sales commissions,
14 whether to be paid at settlement or outside of settlement, and any other charges which either the
15 Borrower or the Seller will pay for at settlement.") (quoting 24 C.F.R. § 3500, App. A) (emphases
16 added). The court does not find that this disclosure requirement further requires Wells to disclose its
17 actual costs of settlement services or the components making up the actual charges imposed.

## III. ORDER

19     For the foregoing reasons, the court GRANTS defendants' motion to dismiss counts two
20 through four of plaintiffs' second amended complaint.

22 DATED:    7/31/07

                              *Ronald M Whyte*
                              RONALD M. WHYTE
                              United States District Judge

---

[8] As noted above, although plaintiffs' first count, which is not the subject of the present motion to dismiss, assert that Wells improperly marked up its charges in violation of RESPA, plaintiffs have conceded that they do not argue that a violation of RESPA serves as a predicate unlawful act for their § 17200 claim.

*United States District Court*
*For the Northern District of California*

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Jacquetta Bardacos | jbardacos@packard.com |
| Ronald D. Packard | rdpackard@packard.com |
| Von G. Packard | vpackard@packard.com |
| Timothy G. Blood | timb@mwbhl.com |

**Counsel for Defendants:**

| | |
|---|---|
| Robert Bader | rbader@goodwinprocter.com |
| William F. Sheehan | wsheehan@goodwinprocter.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   7/31/07                          SPT
                                       **Chambers of Judge Whyte**